# Supreme Court of Florida

---

No. SC2022-0735

---

**ALLSTATE INSURANCE COMPANY, et al.,**
Appellants,

vs.

**REVIVAL CHIROPRACTIC, LLC,**
Appellee.

April 25, 2024

PER CURIAM.

Once again, we address a dispute over the amount of reimbursements for medical expenses that an insurer was required to pay under a personal injury protection (PIP) policy. This dispute comes to us by way of a certified question posed by the United States Court of Appeals for the Eleventh Circuit in *Revival Chiropractic LLC ex rel. Padin v. Allstate Insurance Co.*, No. 21-10559, 2022 WL 1799759, at *1 (11th Cir. June 2, 2022), which we consider under the jurisdiction granted by article V, section 3(b)(6) of the Florida Constitution to review questions of Florida law

certified by federal appellate courts that are "determinative of the cause and for which there is no controlling precedent" of our Court.

Like our recent decision in *MRI Associates of Tampa, Inc. v. State Farm Mutual Automobile Insurance Co.*, 334 So. 3d 577 (Fla. 2021), this case involves the interaction of the PIP statute's foundational requirement that insurers pay 80% of "all reasonable expenses" for medically necessary services with the statutory authorization for an insurer to pay 80% of expenses based on the statutory schedule of maximum charges if the insurer gives notice that it may limit reimbursement pursuant to that schedule. Reduced to its bare bones, the question for decision is whether the insurer here may pay 80% of a charge submitted by a provider even when that reimbursement amount is less than the amount that would be reimbursable under the limitations of the statutory schedule of maximum charges. We conclude that the terms of the PIP policy in this case expressly authorize such a payment and that nothing in the statutory scheme stands in the way of that policy provision.

In analyzing the case, we first briefly review the relevant statutory provisions before setting forth the pertinent policy

provisions. With that groundwork laid, we discuss the opinion of the Eleventh Circuit, which describes the controversy and the arguments of the parties, and we examine the decision of the United States District Court for the Middle District of Florida that is on review in the Eleventh Circuit. We then discuss Florida case law, focusing on our decision in *MRI Associates*. Finally, we rephrase the certified question to more carefully track the facts of the case after we have analyzed the relevant statutory and policy provisions and explained our conclusion that Allstate was entitled to pay 80% of the billed charges at issue here.

## I.

The statutory requirements governing PIP benefits are set forth in section 627.736, Florida Statutes (2017). Section 627.736(1)(a) provides generally that PIP medical benefits must cover "[e]ighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services." Comprehensive provisions regarding "charges for treatment of injured persons" are laid out in section 627.736(5). Subsection (5)(a) requires that medical providers "rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may

charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered" and then enumerates various factors relevant to ascertaining the reasonableness of charges. Subsection (5)(a) moves on to set forth provisions creating and governing the schedule of maximum charges that may be used to limit reimbursement.

Subsection (5)(a) states that reasonable charges "may not exceed the amount the [provider] customarily charges for like services or supplies." Subsection (5)(a) then sets forth various factors that may be used in determining the reasonableness of charges, including "evidence of usual and customary charges and payments accepted by the provider involved in the dispute." Provisions related to the schedule of maximum charges are contained in section 627.736(5)(a)1. Under this provision, "*[t]he insurer may limit reimbursement to 80 percent of the [listed] schedule of maximum charges*" set forth in subsection (5)(a)1.a.-f. (Emphasis added.)

Various requirements concerning the application of the schedule of maximum charges are detailed in subsection (5)(a)2.-5. Of particular relevance to the issue in this case, subsection (5)(a)5.

requires that an insurer provide notice of its election to use the

schedule of maximum charges:

> An insurer *may limit payment* as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer *may limit payment* pursuant to the schedule of charges specified in this paragraph. . . .  If a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer *may pay* the amount of the charge submitted.

(Emphasis added.)

## II.

Under the PIP policy provisions at issue in this case, Allstate

agreed—subject to various conditions—to pay "eighty percent of

reasonable expenses" for "medically necessary" services.  Allstate's

policy further states that "[t]he methodology for determining the

amount" to be paid "shall, pursuant to the *fee schedule limitations*

under Section 627.736(5)(a)1. . . . *or any other limitations*

established by Section 627.736 . . . or any other provisions of the

Florida Motor Vehicle No-Fault Law, as enacted, amended or

otherwise continued in the law, *be limited* to eighty percent of [a

listed] schedule of maximum charges" that parallels the statutory

schedule "(or any other fee schedule limitation which may be

enacted, amended or otherwise continued in the law)." (Emphasis added.)

The policy goes on to provide: "If a provider submits a charge for an amount less than the amount determined by the fee schedule or other limitations established by Section 627.736 . . . or any other provisions of the Florida Motor Vehicle No-Fault Law . . . [Allstate] *will pay eighty percent of the charge that was submitted.*" (Emphasis added.)

### III.

As the Eleventh Circuit explained, Allstate issued separate auto insurance policies—both containing the PIP provisions set forth above—to Natalie Rivera and Jazmine Padin. *Revival Chiropractic ex rel. Padin*, 2022 WL 1799759, at *1. The circuit court detailed the genesis of this litigation:

> Padin and Rivera were both involved in car accidents, and they sought treatment from Revival. They also assigned to Revival any rights and benefits that they had under their respective policies.
> After rendering services to these insureds, Revival submitted a charge of $100. The services corresponded to a maximum charge of $149.92 under the statutory schedule. So 80% of the maximum charge under the schedule was $119.94, which was higher than the submitted charge. *See* Fla. Stat. § 627.736(5)(a)1. Because the charge of $100 was less than $119.94, the

- 6 -

statute expressly allowed Allstate to pay the amount billed. *Id.* § 627.736(5)(a)5. Instead of paying the scheduled amount or amount billed, Allstate chose to pay 80% of the amount billed—$80.

Revival also submitted a charge of $75 for a service corresponding to a maximum charge of $81.70 under the schedule. Again, instead of paying 80% of the maximum charge under the schedule ($65.36) or the amount billed ($75), Allstate paid 80% of the amount billed ($60).

Neither Padin nor Rivera paid the remaining 20% of the charges submitted to Allstate.

Revival filed a putative class action against Allstate in Florida state court, seeking a judgment "[d]eclaring that [Allstate] violated Florida law by paying only 80% of the charges submitted where the charges submitted were for less than the amounts allowed" under Section 627.736(5)(a)1.

*Id.* at *1-2 (alterations in original).

Allstate removed the case from state court to the Middle District Court, where Allstate and Revival filed dueling motions for summary judgment. *Id.* at *2. Allstate contended that it had complied with the express provisions of its policy, which authorized paying 80% of the amount billed, and that its policy provisions were consistent with the PIP statute's "overarching requirement" that PIP insurers pay 80% of reasonable medical expenses. *Id.* Allstate argued that the provision of subsection (5)(a)5. that an "insurer *may* pay the amount of the charge submitted" was purely permissive. *Id.* (emphasis added). Revival focused on Allstate's policy notice

- 7 -

that it would use the schedule of maximum charges. Revival asserted that Allstate's election of the schedule of maximum charges required it to proceed exclusively under the provisions related to that schedule and thus bound it either to pay 80% of the charge specified by the schedule or to pay pursuant to subsection (5)(a)5.'s provision for full payment of "the amount of the charge submitted" when the charge is for "an amount less than the amount allowed under" subsection (5)(a)1., governing reimbursement pursuant to the schedule of maximum charges. *Id.*

The district court agreed with Revival's argument, granted Revival's motion, and denied Allstate's. *Id.* Relying on the canon against surplusage,[1] the district court reasoned that "Allstate's argument would render § 627.736(5)(a)[5.] unnecessary and meaningless because common sense dictates that no insurer would ever pay the full amount of [the charge submitted] as provided

---

1. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)).

under [that provision], if it could, as Allstate argues, pay only 80 percent of the [charge submitted]." *Revival Chiropractic LLC v. Allstate Ins. Co.*, No. 6:19-cv-445-PGB-LRH, 2020 WL 2483583, at *5 (M.D. Fla. Mar. 5, 2020).

In reaching its conclusion that "there are no clear controlling precedents" from our Court on the issue in this case, the Eleventh Circuit began by taking note of two decisions from Florida District Courts of Appeal that it found to provide support for Revival's position—*Hands On Chiropractic PL v. GEICO General Insurance Co.*, 327 So. 3d 439 (Fla. 5th DCA 2021), and *Geico Indemnity Co. v. Muransky Chiropractic P.A.*, 323 So. 3d 742 (Fla. 4th DCA 2021). *Revival Chiropractic ex rel. Padin*, 2022 WL 1799759, at *3. The Eleventh Circuit observed that these cases determined that "when an insurer gives notice that it will reimburse according to the scheduled rates, it must either pay 80% of the applicable fee schedule or 100% of the bill." *Id.* The circuit court went on to point out that the reasoning of these cases has been "undermined" but "not directly repudiate[d]," *id.*, by our decision in *MRI Associates*, which held that "the schedule of maximum charges" is not "an exclusive method" of establishing reimbursement rates but "an

- 9 -

optional method" of limiting reimbursements that is available to insurers that give notice that they may use it and that it therefore "establishes a ceiling but not a floor," *id.* (quoting *MRI Assocs.*, 334 So. 3d at 585).

Based on its understanding of the "substantial uncertainty" in Florida law, the circuit court certified the following question to us:

> When a personal injury protection insurance policy provides notice that it will limit payment pursuant to the statutory schedule of maximum charges, may an insurer pay 80% of the charge submitted, even when the charge submitted is less than 80% of the statutory schedule of maximum charges?

*Id.* at *4.

## IV.

In *MRI Associates*, we considered whether an insurer's election to use the schedule of maximum charges was required to be an exclusive choice for determining the amount of reasonable charges. 334 So. 3d at 579, 585.  The provider contended "that section 627.736(5)(a) contains two mutually exclusive methods of calculating the amount of reasonable reimbursement—namely, (1) the method set forth in subsection (5)(a)'s enumeration of factors for determining reasonableness, and (2) the maximum schedule of

- 10 -

charges set forth in subsection (5)(a)1." *Id.* at 582-83. Because the insurer's policy allowed the use of both the schedule of maximum charges and the other enumerated factors for determining reasonableness, the provider argued that the election of the schedule was ineffective. *Id.* at 583. We categorically rejected this argument that a "hybrid-payment methodology" was prohibited. *Id.* at 585.

In explaining our conclusion that the PIP statute does not "preclude an insurer that elects to limit PIP reimbursements based on the schedule of maximum charges from also using the separate statutory factors for determining the reasonableness of charges," we focused on the nature of the notice required by the statute concerning use of the schedule of maximum charges. *Id.* at 584-85. We reasoned that subsection (5)(a)5.'s provision "that 'an insurer *may* limit payment' if the policy contains notice that 'the insurer *may* limit payment pursuant to the schedule of charges' . . . cannot be reconciled with the argument that an election to use the limitations of the schedule of maximum charges" must be an exclusive election. *Id.* at 584. We noted that the "permissive nature of the statutory notice language . . . signals that the insurer is given

an option that may be used in addition to other options that are authorized." *Id.* We also pointed out that the statutory "notice language echoes the underlying authorization to limit reimbursements under the schedule of maximum charges: 'The insurer *may limit* reimbursement to 80 percent of the [listed] schedule of maximum charges.' § 627.736(5)(a)1., Fla. Stat. (emphasis added)." *Id.* (alteration in original).

Based on "the full context of these provisions," we concluded that "a reasonable reading of the statutory text requires that reimbursement *limitations* based on the schedule of maximum charges be understood . . . simply as an optional method of capping reimbursements rather than an exclusive method for determining reimbursement rates"—that is, as "a ceiling but not a floor." *Id.* at 584-85.

The two Florida district court decisions mentioned by the Eleventh Circuit—*Hands On* and *Muransky*—dealt with policy provisions materially different from the provisions in Allstate's policy. *See Hands On,* 327 So. 3d at 442 n.3 ("Geico contractually elected to always pay the billed amount in full where the billed amount was less than 80 percent of the 200 percent of the

- 12 -

applicable fee schedule."); *Muransky*, 323 So. 3d at 748 (policy provision "indicate[d] Geico's promise to pay certain charges 'in the amount of the charge submitted' "). In any event, both cases were decided before and without the benefit of our decision in *MRI Associates*. We agree with the Eleventh Circuit that those decisions of our district courts have been undermined by *MRI Associates*. Indeed, we conclude that they have been undermined to the extent that whatever they might have to say relevant to the issue in this case has been superseded by our analysis in *MRI Associates*. We therefore do not find them useful in our consideration of the issue presented by the certified question.

Unlike the courts deciding *Hands On* and *Muransky*, the Second District Court of Appeal had the benefit of our decision in *MRI Associates* when it reviewed a trial court ruling that an insurer "could not pay [a provider] 80 percent of the amounts [the provider] charged, and instead was required to pay either 100 percent of [the provider's] charges or 80 percent of the amount allowed under the statutory schedule of maximum charges." *Progressive Am. Ins. Co. v. Back on Track, LLC*, 342 So. 3d 779, 780 (Fla. 2d DCA 2022). Based largely on our reasoning in *MRI Associates*, the Second

District reversed the trial court. *Id.* at 780, 783. The court held "that a PIP insurer whose policy includes a notice that it will limit medical provider reimbursements" under the schedule of maximum charges "is not required to calculate all provider reimbursements in accordance with the statutory schedule of maximum charges" but may pay a provider 80% of the amount of the provider's charges. *Id.* at 793. This decision of the Second District issued after the Eleventh Circuit certified the question we now consider.

V.

"Because the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law— specifically, the PIP statute—as well as to interpret the insurance policy, our standard of review is de novo." *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, 141 So. 3d 147, 152 (Fla. 2013).

As we stated in *MRI Associates*, "[w]hen 'interpreting an insurance contract,' this Court is 'bound by the plain meaning of the contract's text,' " 334 So. 3d at 583 (quoting *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011)), and "[w]e are similarly bound by the plain meaning of the text of the provisions of the PIP statute," *id.* We have also recognized the

- 14 -

fundamental principle that "[c]ontext is a primary determinant of meaning." *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) (quoting Scalia & Garner, *supra* note 1, at 167). Provisions in the texts of statutes and contracts cannot be viewed in isolation from the full textual context of which they are a part. "Under the whole-text canon, proper interpretation requires consideration of 'the entire text, in view of its structure and of the physical and logical relation of its many parts.' " *Id.* (quoting Scalia & Garner, *supra* note 1, at 167).

Applying these basic principles, we conclude that the provisions of both the statute and the policy support Allstate's payment of 80% of the amount of the charges submitted.

We begin with "the heart of the PIP statute's coverage requirements"—that is, the provision of section 627.736(1)(a) requiring PIP insurers to "reimburse eighty percent of reasonable expenses for medically necessary services." *Virtual Imaging*, 141 So. 3d at 155. Allstate correctly characterizes this 80% of reasonable expenses requirement as the "overarching mandate" of the PIP statute. Nothing in the PIP statute can be properly understood in isolation from this foundational provision. And the provision cuts

strongly against Revival's argument that Allstate was required to pay 100% of the amount of charges submitted. The point is reinforced by the requirement of subsection (5)(a) that providers "may charge the insurer and injured party only a reasonable amount." § 627.736(5)(a), Fla. Stat. Revival is in no position to contend that the charges it submitted were other than for a reasonable amount. *See Nationwide Mut. Ins. Co. v. Jewell*, 862 So. 2d 79, 86 (Fla. 2d DCA 2003) ("[T]here is simply no basis for complaining that a payment rate a provider has agreed to accept is inadequate and therefore not reasonable."), *approved by Allstate Ins. Co. v. Holy Cross Hosp., Inc.*, 961 So. 2d 328 (Fla. 2007).

Of course, Revival's position is that Allstate's election to limit reimbursements based on the schedule of maximum charges effectively provided an exception to the statutory provision limiting reimbursements to 80% of reasonable charges. But Revival's understanding is based on a misreading of the provisions of both section 627.736 and Allstate's PIP policy. Revival errs in misunderstanding the nature of the statutory authorization to limit reimbursements under the schedule when an insurer has given statutory notice that it may limit reimbursements under the

- 16 -

schedule.  It further errs in reading the purely permissive provisions of subsection (5)(a)5. as entailing a conditional *requirement* to pay 100% of the amount of "the charge submitted" when that amount is less than the amount reimbursable under the schedule of maximum charges.  Reading Allstate's policy through the same distorted interpretive lens, Revival contends that the policy reflects an election to exclusively proceed pursuant to the statutory provisions governing the schedule of maximum charges.  Revival's approach subverts the manifest purpose of both the PIP statute and Allstate's PIP policy by ignoring the clear terms of both texts.

As *MRI Associates* makes clear, the PIP statute contemplates that an insurer providing notice that it may use the schedule of maximum charges will not thereby be precluded from paying 80% of reasonable charges as otherwise determined under the provisions of subsection (5)(a).  334 So. 3d at 585.  The PIP statute thus sets up the framework for an insurer to opt into a "hybrid-payment methodology."  *Id.*  This flows from the permissive language used in the notice provisions of subsection (5)(a)5.: "An insurer may limit payment" if the insurer gives notice in its policy that it "may limit payment" under the schedule of maximum charges.  And it flows

from the permissive language used in subsection (5)(a)1. that establishes the underlying authorization for the schedule of maximum charges: an insurer "may limit reimbursement to 80 percent" of the schedule of maximum charges. All this language denoting permissive limitation establishes that the schedule constitutes an optional limitation that may be invoked by an insurer—if the insurer's policy contains the necessary notice—in determining reasonableness under the overarching mandate to pay 80% of reasonable charges.

Revival in effect contends that Allstate stepped out of this statutory framework in which a hybrid-payment methodology is the norm and through its policy made an exclusive election of the schedule of maximum charges. But the policy's terms belie that contention. The policy expressly provides that Allstate will pay "eighty percent of reasonable expenses." Most pertinent to the dispute here, the policy also contains a backstop provision that specifically provides for a divergence from the amount reimbursable under the schedule of maximum charges when the charge submitted is for an amount less than the amount reimbursable under the schedule or otherwise under the statute. In such

circumstances, Allstate's policy provides that it "will pay eighty percent of the charge that was submitted." That provision is consistent with the mandate of section 627.736(1)(a) to pay "[e]ighty percent of all reasonable expenses for medically necessary" services. And it transgresses no other provision of the statute. Moreover, in addition to giving notice that payments will be *limited* by the schedule of maximum charges, the policy in describing the "methodology" for determining the amount to be paid specifically makes that determination subject to "*any other limitations established by Section 627.736 . . . or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law.*" (Emphasis added.) This is in line with the permissive language of subsection (5)(a)5.'s notice provision and subsection(5)(a)1.'s authorization of the schedule, which both signal that the schedule is designed as a non-exclusive option. It is, of course, possible that an insurer could employ policy language making an exclusive election of the schedule of maximum charges. But Allstate certainly has not done so.

We reject the view urged by Revival and adopted by the Middle District Court that the provisions of subsection (5)(a)5. require

payment of no less than the full amount of the charge submitted when that amount is below the reimbursement payable under the schedule. This view is logically predicated on understanding Allstate's policy notice that it may use the schedule as an exclusive election. Our rejection of that understanding of Allstate's policy is a sufficient basis for rejecting the derivative understanding of the application of subsection (5)(a)5.'s provision regarding payment of "the amount of the charge submitted," which would be irreconcilable with an insurer's options under a policy permitting a hybrid-payment methodology.

But the understanding of that provision as a requirement binding on Allstate involves another fundamental problem. As with the misinterpretation of Allstate's policy notice, it attempts to transform permissive language into mandatory language. The pertinent language of subsection (5)(a)5. is entirely permissive: "If a provider submits a charge for an amount less than the amount allowed under [the schedule of maximum charges], the insurer *may pay* the amount of the charge submitted." (Emphasis added.) There is no basis for understanding "may pay" as a conditional "must pay" or as otherwise displacing the statutory provision—

which is mirrored in Allstate's policy—limiting reimbursements to 80% of reasonable charges. If the legislature wishes to mandate something, it is perfectly capable of saying so. Indeed, few words are more common in the language of legislation than "shall" and "must." *Cf. Jewell*, 862 So. 2d at 85 ("If the legislature wishes to prohibit something, it is perfectly capable of saying so. Indeed, few words are more common in the language of legislation than the phrases 'may not' and 'shall not.' ").

And the canon against surplusage does not justify substituting "must pay" for "may pay." We have recognized that it "is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible." *Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003). But the "if possible" condition concluding our statement of the principle is quite significant. Accordingly, we have acknowledged that the canon against surplusage is "not 'an absolute rule,' " nor "a license for the judiciary to rewrite language enacted by the legislature." *Tsuji v. Fleet*, 366 So. 3d 1020, 1030 (Fla. 2023) (first quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); and then quoting *United States v. Albertini*, 472 U.S.

- 21 -

675, 680 (1985)). An effort to find applicable meaning for a provision does not warrant distortion of the plain import of the text by converting a permissive provision into a mandatory provision.[2]

Based on the policy language involved in this case, we reframe the certified question as follows:

> Under a PIP policy providing notice that the insurer (a) will pay 80% of reasonable expenses for medically necessary services, (b) may limit payment pursuant to the statutory schedule of maximum charges and other statutory limitations, and (c) will pay 80% of a submitted charge if that charge is less than the amount reimbursable under the schedule or other statutory provisions, may the insurer pay 80% of the charge submitted by a medical provider, even if the charge submitted is for less than the amount reimbursable under the schedule?

We answer this question in the affirmative.

## VI.

Allstate's policy specifically addresses the circumstances at issue in this case. The policy provides that Allstate will pay 80% of reasonable expenses and it expressly permits Allstate to pay 80% of

---

2. We also note that although there is no apparent likely application of the last sentence of subsection (5)(a)5. under the terms of Allstate's policy, that might not be the case under some other policy terms.

the charges submitted. Nothing in the PIP statute invalidates the policy provisions authorizing such payments. On the contrary, those provisions faithfully carry out the statutory mandate to pay 80% of reasonable expenses for medical services. Having answered the rephrased certified question, we return this case to the Eleventh Circuit Court of Appeals.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 21-10559

Richard C. Godfrey of Quinn Emanuel Urquhart & Sullivan, LLP, Chicago, Illinois; Peter J. Valeta of Cozen O'Connor, Chicago, Illinois; and Alexandra J. Schultz of Cozen O'Connor, West Palm Beach, Florida,

    for Appellants

Chad A. Barr of Chad Barr Law, Altamonte Springs, Florida; Alyson M. Laderman of Akylade, LLC, Longwood, Florida; and Lawrence M. Kopelman of Lawrence M. Kopelman, P.A., Plantation, Florida,

    for Appellee

Marcy Levine Aldrich and Nancy A. Copperthwaite of Akerman LLP, Miami, Florida,

for Amicus Curiae Personal Insurance Federation of Florida